ODELL v. The WASHINGTON IRVING. See Case No. 17,243.

ODENHEIMER (ASKEW v.). See Cases Nos. 586 and 587.

## Case No. 10,429.

ODENHEIMER v. HANSON et al.

[4 McLean, 437.] [1]

Circuit Court, D. Ohio. July Term, 1848.

EQUITY— FRAUDULENT CONVEYANCE— PARTIES TO THE FRAUD.

1. Whatever subterfuges may be resorted to to defeat the claims of creditors, a court of chancery will reach the property conveyed or covered.

2. As between the individuals who have concocted the fraud, chancery will not interfere.

3. Circumstances, in such matters, are sometimes strong enough to stamp the transaction with fraud, although against the oaths of the parties concerned.

In equity.

Hunter & Stanbery, for complainants.

OPINION OF THE COURT. At a former term a decree was entered between the present parties, in which a conveyance of ninety-three and three-fourth acres of land conveyed by A. V. Taylor, one of the defendants, to Miles Hanson, another of the defendants, was held to be fraudulent and void against the complainant, who had obtained a judgment against John Hanson, the land being his property, he having conveyed it to Taylor in fraud of creditors; and the conveyance from Taylor to Miles, the son of John Hanson, being with full notice of the fraud, and he being a participator in it. The only point which remained unsettled by the former decree was, as to the ownership of six hundred dollars which Taylor received from Miles Hanson, on the conveyance to him of the above tract of land.

From the investigation in this case, John Hanson, his son Miles Hanson, and A. V. Taylor, have been held to have acted fraudulently in the transfer of the land, to defeat

[1] [Reported by Hon. John McLean, Circuit Justice.]

the claim of the plaintiff, and the only question now is, whether the sum in controversy belonged to John Hanson or his son Miles. Taylor having received the money from Miles, on the fraudulent conveyance of the land, is liable to account for it to the complainant, as a creditor of John Hanson, if the money was advanced by him. Neither John Hanson nor his son Miles could recover the money from Taylor, as no court will ever interpose its authority to settle a matter between particeps criminis. They are left as between themselves, where their own fraudulent acts have placed them. But a court of equity, in such a case, will interpose in behalf of creditors, and for their benefit, reach the property which has been fraudulently covered, and unjustly withheld from them. The original bill charges, that prior to the sale of the above tract, by Taylor to Miles Hanson, John Hanson, "in his own right held a promissory note on John Greenwood, of the city of Columbus, for six hundred dollars, loaned by him to said Greenwood," etc. The answer to the bill by Miles Hanson avers, "that on the 11th February, 1842, he paid said Taylor one hundred and fifty dollars in cash, and gave him a note on John Greenwood for six hundred dollars, which note was given by him to John Hanson. That the note of Greenwood did not belong to his father but to him. That previous to the date of said note, he had laid by the sum of six hundred dollars, and preferring to have it in responsible hands, he sent it to Columbus by his father, who placed it in the hands of John Greenwood, who drew a note payable to his father, which his father, so soon as he returned from Columbus, indorsed to him." The bill charges that the said Taylor fraudulently obtained possession of said note and appropriated it to his own use.

John Hanson, in his answer, denies that he had any interest, equitable or otherwise, in said note, at the time it was assigned to Taylor. It is proved that John Hanson loaned the money to Greenwood, and took the note payable to himself, no statement being made or intimated at the time, that Miles Hanson had any interest in it. And at the same time the note was executed, seventeen dollars interest was paid to John Hanson, due on sums which, being united, made up the amount of six hundred dollars, for which the note was given. The statements in regard to this money, given by John Hanson and Miles, are not consistent with each other, nor with the statements made at different times by themselves. The land purchased did not belong to Taylor but to John Hanson as this court have determined, and this purchase being fraudulent, it is by no means probable, that the money paid by Miles was his own. He had a full knowledge of the transaction, and it is unreasonable to suppose that he would pay six hundred dollars on a fraudulent contract. The fraud was concocted between the three defendants, with the view of

defrauding the creditors of John Hanson; he was most interested in putting the property beyond their reach. The payment to Taylor was made to cover the fraud, and the presumptions arising from the facts are strong that the money as well as the land, was furnished by John Hanson. He loaned it as his own, received interest on it, which was an important element in the deliberate fraud that was committed. The acts in regard to the land are so connected that the transaction can not be viewed as a whole, without coming to the conclusion that the whole was fraudulent. In the nature of things, one part, the conveyance of the land, could not be fraudulent, if the money was paid by Miles Hanson. But he acted fraudulently, as we have already determined, and connected together as the parties were, it would seem to be impossible, that a matter in which the fraud consisted, should, in any one of its parts be bona fide. We are satisfied that the money paid for this land by Miles Hanson to Taylor was advanced by John Hanson. And the question that remains is, whether Taylor, who has appropriated it to his own use, shall be held to account for it to the complainant. Taylor has paid no value for it, as the land on which it was paid did not belong to him, but to John Hanson. The money paid, equally with the land, we think, belonged to John Hanson, and is liable to the claims of his creditors. We shall, therefore, decree that the six hundred dollars and interest thereon, from the time it was received, shall be paid to the complainant in —— days, and on failure to pay, that execution shall issue, etc.